UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDINAJIB ALI ,<br><br>                    Petitioner,<br><br>    v.<br><br>PAMELA BONDI, *et al.*,<br><br>                    Respondents. | Case No. C26-73-MLP<br><br>ORDER GRANTING HABEAS RELIEF |

Petitioner Abdinajib Ali is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center. Through counsel, he has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody. (Dkt. # 1.) Petitioner asserts that he is entitled to release because removal to the countries designated in his removal order is not reasonably foreseeable and his continued detention is therefore in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001). Petitioner further seeks an order prohibiting redetention or removal to another country without notice and an opportunity to be heard and barring third-country removal for punitive reasons. Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1).[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 5.)

ORDER GRANTING HABEAS RELIEF - 1

## I. BACKGROUND

Petitioner was born in Ethiopia and grew up in a refugee camp in Botswana. (Dkt. # 1 at 5.) His family was granted asylum and admitted to the United States in 2015. (*Id.*) After serving time for a drug conviction, he was detained by ICE in January 2025. (*Id.*) On June 23, 2025, an immigration judge denied all relief and ordered Petitioner removed to Somalia or, in the alternative, Ethiopia. (*Id.*)

On January 8, 2026, Petitioner filed his petition (dkt. # 1), attaching a copy of a July 9, 2025 memorandum from Todd M. Lyons, ICE Acting Director (dkt. # 1-1), and two sworn declarations filed in other cases (dkt. ## 1-2, 1-3). On January 22, 2026, Respondents filed a return (dkt. # 9) supported by declarations from Respondents' counsel Kristin B. Johnson (dkt. # 10) and ICE Deportation Officer Joseph B. Carnevale (dkt. # 12-1). Neither declaration was sworn to be true and correct under penalty of perjury.

Petitioner filed a reply (dkt. # 19) supported by his sworn declaration (dkt. # 23-1) on February 2, 2026, and a notice of supplemental authority on February 4, 2026 (dkt. # 21). The Court, on review of the parties' submissions, determined that additional evidence would be helpful regarding the effect of any alleged noncooperation with obtaining travel documents. (*See* dkt. ## 22, 24-25.) On March 5, 2026, Respondents filed a brief (dkt. # 26) supported by the unsworn declaration of Deportation Officer Javier Delgado (dkt. # 27), and Petitioner filed a brief (dkt. # 28) supported by his second sworn declaration (dkt. # 29-1).

## II. DISCUSSION

### A. Indefinite Detention

Title 8 U.S.C. § 1231 governs the detention of noncitizens, like Petitioner, who have been ordered removed. Under § 1231(a), the government must detain a noncitizen during the 90-day

1  "removal period." 8 U.S.C. §§ 1231(a)(1)(A), (a)(2). Here, the removal period began on June 23,
2  2025, the date Petitioner's removal order became final, and expired on September 21, 2025. 8
3  U.S.C. § 1231(a)(1)(B)(i).

4      After the removal period expires, the government may exercise its discretion to release
5  under supervision or to continue to detain certain noncitizens. 8 U.S.C. § 1231(a)(6). Although
6  § 1231(a)(6) authorizes ICE to detain Petitioner, it cannot do so indefinitely. In *Zadvydas*, the
7  Supreme Court held that this provision implicitly limits detention to a period reasonably
8  necessary to effect removal and does not permit "indefinite" detention. 533 U.S. at 701. The
9  Supreme Court established that detention is "presumptively reasonable" for six months following
10 entry of a final removal order. *Id*. After six months, if the noncitizen provides "good reason to
11 believe that there is no significant likelihood of removal in the reasonably foreseeable future,"
12 the government must rebut that showing with evidence. *Id*. If it fails to do so, the noncitizen is
13 entitled to habeas relief. *Id*.

14     The six-month presumption is not a strict deadline; a noncitizen may be detained beyond
15 six months if removal remains likely. *Zadvydas*, 533 U.S. at 701. Nevertheless, "for detention to
16 remain reasonable, as the period of prior postremoval confinement grows, what counts as the
17 'reasonably foreseeable future' conversely would have to shrink." *Id*.

18     **B.**    **Analysis**
19     Petitioner has been detained during the approximately eight months since his removal
20 order became final. He has therefore been detained beyond the six-month period that is
21 "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Petitioner then bears the initial burden
22 to show good reason to believe there is no significant likelihood of removal.
23

ORDER GRANTING HABEAS RELIEF - 3

1    Petitioner asserts removal is not reasonably foreseeable because Ethiopia has not
2    responded to the travel document request sent several months ago and because Ethiopia bases
3    citizenship on parental nationality and his parents are Somali. (Dkt. # 19 at 7.)
4    Respondents do not address Petitioner's evidence. Instead, they argue that Petitioner
5    caused delay in obtaining a travel document and, thus, cannot show good reason to believe there
6    is no significant likelihood of removal. (Dkt. # 9 at 8-9 (citing *Lema v. I.N.S.*, 341 F.3d 853 (9th
7    Cir. 2003); *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003)).)
8    A noncitizen who "refuses to cooperate fully and honestly with officials to secure travel
9    documents from a foreign government . . . cannot meet his or her burden to show there is no
10   significant likelihood of removal in the reasonably foreseeable future." *Lema*, 341 F.3d at 856.
11   This is because "the detainee cannot convincingly argue that there is no significant likelihood of
12   removal in the reasonably foreseeable future if the detainee controls the clock." *Pelich*, 329 F.3d
13   at 1060.
14   Officer Carnevale states in his unsworn declaration that on July 24, 2025, ICE delivered a
15   travel document request package to the Somali embassy, which rejected it the same day.
16   (Carnevale Decl., ¶ 15.) He states that on October 5, 2025, Petitioner refused to sign the travel
17   document application for Ethiopia, but on December 10, 2025, he stated that he would cooperate.
18   (*Id.*, ¶¶ 17-18.) Officer Carnevale asserts that "Ethiopia issues travel documents routinely" and
19   thus there is a significant likelihood of removal in the foreseeable future to Ethiopia. (*Id.*, ¶ 19.)
20   Petitioner's sworn declaration states that, on February 12, 2026, he met with Officer
21   Carnevale and told him that he was willing to sign documents previously provided. (Second Ali
22   Decl.) Officer Carnevale "told [him] that there was no need for [him] to do so." (*Id.*)
23

ORDER GRANTING HABEAS RELIEF - 4

1  Officer Delgado states in his unsworn declaration that on February 18, 2026, Petitioner
2  signed a new travel document application and, ten days later, the application was physically
3  mailed to be routed to the Ethiopian embassy in Washington D.C. (Delgado Decl., ¶¶ 4-5.)
4  Officers Carnevale and Delgado do not affirm that their declarations are true and correct,
5  and they do not state that they are made under penalty of perjury. The Court therefore does not
6  credit their statements. *See Wana v. Bondi*, 2025 WL 3628634, at *4 (W.D. Wash. Dec. 15,
7  2025) (declining to consider a declaration that was neither sworn true nor made under penalty of
8  perjury). In any event, even if accepted as true, the officers' statements indicate that ICE took no
9  action for the over two months between Somalia rejecting a travel document request on July 24,
10 2025, and Petitioner's purported refusal to sign documents on October 5, 2025. Then, after
11 Petitioner began cooperating on December 10, 2025, ICE took no action for another two months
12 until February 18, 2026, when Petitioner's signature was obtained. According to Petitioner's
13 sworn declaration, on February 12, 2026, Officer Carnevale refused Petitioner's offer to sign
14 documents. (Second Ali Decl.) This was three days after the Court ordered the parties to address
15 whether Petitioner's alleged noncooperation hindered Respondents' efforts to obtain a travel
16 document. (Dkt. # 22.) While Respondents undisputedly took no action for over four months, at
17 most they allege that Petitioner refused to sign documents on one occasion and then promised
18 cooperation two months later.
19 Denying *Zadvydas* relief based on a petitioner's noncooperation requires far more. In
20 *Pelich*, the petitioner "steadfastly refused" to fill out a passport application and, thus, the court
21 reasoned that he "could likely effectuate his removal by providing the information requested[.]"
22 329 F.3d at 1059-60. In *Lema*, the petitioner told the Ethiopian consulate that he was Eritrean
23 and for two years refused to cooperate or provide requested documents. 341 F.3d at 855, 857.

ORDER GRANTING HABEAS RELIEF - 5

Substantial evidence supported the district court's finding that the lack of a travel document was "caused by [his] continuing failure to cooperate[.]" *Id.* at 857. Here, in contrast, the evidence is insufficient to determine that Petitioner's actions have made removal not reasonably foreseeable. Even Respondents are "unsure" if any initial refusal to provide a signature affected the processing of the travel document request. (Dkt. # 24 at 2.) The Court finds Petitioner has met his burden to show good reason to believe there is no significant likelihood of removal.

The burden therefore shifts to the government to come forward with concrete evidence that his removal is significantly likely in the reasonably foreseeable future. Respondents offer no admissible evidence but argue that there is "no reason to believe" that the country of removal will refuse to accept petitioner or that removal is legally barred. (Dkt. # 9 at 9 (citing *Diouf v. Mukasey*, 542 F. 3d 1222, 1233 (9th Cir. 2008)).) The *Diouf* court provided those as examples for how a petitioner could meet his burden under *Zadvydas*. 542 F.3d at 1233. Here, however, Petitioner met his burden as discussed above. Respondents have neither countered his evidence nor produced any evidence that removal is significantly likely. On this record, the Court finds Respondents have not met their burden. Accordingly, Petitioner is entitled to habeas relief of immediate release.

### C.     Future Redetention or Third Country Removal

Petitioner further seeks an order prohibiting redetention without due process or removal to a third country. (Dkt. # 1 at 7-18; *see also* dkt. # 19 at 10-11.) He does not claim that he is likely to be subject to third-country removal, however, and provides no evidence to support his assertion that he is likely to be redetained without due process. For this reason, Petitioner's request for injunctive or habeas relief limiting redetention or preventing third country removal is denied without prejudice. *See, e.g.*, *Tran v. Bondi*, 2025 WL 3140462, at *4 (W.D. Wash. Nov.

10, 2025) (Petitioner's "claims based on the possibility of third-country removal are speculative and invite the court to decide claims that are not part of a live controversy.").

### III.    CONCLUSION

For the foregoing reasons, the Court ORDERS that Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part. Within **twenty-four (24) hours** of this Order, Respondents shall release Petitioner from custody subject to reasonable conditions of supervision; and within **two (2) business days** of this Order, Respondents shall file a notice with the Court confirming his release.

Dated this 9th day of March, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge